IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HEZEKIAH SWEENEY, III
    *Plaintiff*,

v.                                        Civil Action No. ELH-16-0859

KHURRAM M. KHAN,
    *Defendant*.

**MEMORANDUM**

Plaintiff Hezekiah Sweeney, III filed suit on March 22, 2016, against defendant Khurram M. Khan, asserting wage claims under the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. § 201 *et seq.*; the Maryland Wage And Hour Law ("MWHL"), § 3-401 *et seq.* of the Labor and Employment Article ("L.E.") of the Maryland Code; and the Maryland Wage Payment and Collection Law ("MWPCL"), L.E. § 5-301, *et seq.* ECF 1.[1] In particular, plaintiff seeks compensation for hours he worked as a cook at defendant's "Pizza Boli's" restaurant in the Federal Hill neighborhood of Baltimore City. He claims that he was not paid the required minimum wage or overtime during his employment, from early October of 2014 to January 31, 2016. ECF 1, ¶¶ 4, 8, 11, 12.

The docket reflects that defendant was served on June 20, 2016. ECF 17. However, he never responded to the suit. Therefore, pursuant to a motion filed by Sweeney (ECF 19), the Clerk entered an Order of Default against defendant on February 10, 2017. ECF 20.

---

[1] Three additional plaintiffs joined in the suit, but their claims were voluntarily dismissed. ECF 10; ECF 11.

On February 17, 2017, plaintiff filed a "Motion For Default Judgment, Attorneys' Fees And Costs" (ECF 21), supported by exhibits (collectively, the "Motion").[2] The exhibits include the Affidavit of Sweeney (ECF 21-1); the Affidavit of Bradford Warbasse, Esquire (ECF 21-2); and the Declaration of Howard Hoffman, Esquire. ECF 21-4. Defendant has not responded to the Motion, and the time to do so has expired. *See* Local Rule 105.2(a).

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall GRANT the Motion, as modified.

### DISCUSSION

### A.

Rule 55(b) of the Federal Rules of Civil procedure governs default judgments. In particular, Rule 55(b)(1) provides that the clerk may enter a default judgment if the plaintiff's claim is "for a sum certain or a sum that can be made certain by computation."[3] But, "[a] plaintiff's assertion of a sum in a complaint does not make the sum 'certain' unless the plaintiff claims liquidated damages; otherwise the complaint must be supported by affidavit or documentary evidence. *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794 (D. Md. 2010) (Grimm, M.J.).[4]

The United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on the merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993); *see Tazco, Inc. v. Director, Office of Workers' Compensation Program,* 895 F. 2d 949, 950 (4th

---

[2] In October 2016, Sweeney moved for the default judgment without having obtained an order of default. *See* ECF 12. That motion was denied as premature. ECF 16.

[3] If the sum is not certain or ascertainable through computation, the court looks to Rule 55(b)(2).

[4] Judge Grimm now serves as a United States District Judge. But, he authored *Monge* when he was a United States Magistrate Judge.

Cir. 1990); *Disney Enters. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md. 2006).  That policy is

not absolute, however.  Default judgment "'is appropriate when the "adversary process has been

halted because of an essentially unresponsive party.'"  *Entrepreneur Media, Inc. v. JMD*

*Entertainment Group, LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013) (quoting *SEC v. Lawbaugh*,

359 F. Supp. 2d 418, 421 (D. Md. 2005)).

      As noted, defendant did not respond to the suit.  Therefore, plaintiff's factual allegations,

other than those pertaining to damages, are deemed admitted.  *See* Fed. R. Civ. P. 8(b)(6); *see*

*also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (stating that the

court accepts as true the well pleaded factual allegations in the Complaint as to liability).  But,

the court must determine whether the undisputed factual allegations constitute a legitimate cause

of action.  *Id.* at 780-81; *see also* 10A Wright, Miller & Kane, *Federal Practice and Procedure* §

2688 (3d ed. 2010 Supp.) ("[L]iability is not deemed established simply because of the

default . . . and the court, in its discretion, may require some proof of the facts that must be

established in order to determine liability.").

      If the court is satisfied that liability has been established, it must then determine the

appropriate amount of damages.  *Ryan*, 253 F.3d at 780-81.  Allegations "relating to the amount

of damages" are not deemed admitted based on a defendant's failure to respond to a suit.  Fed R.

Civ. P. 8(b)(6); *see Ryan*, 253 F.3d at 780 ("'[D]efault is not treated as an absolute confession by

the defendant of his liability and of the plaintiff's right to recover'") (citation omitted); *Monge*,

751 Supp. 2d at 794; *Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, Inc.*,

No. DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-

pled allegations in a complaint as to liability are taken as true, although the allegations as to

damages are not."); *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No.

6:09cv00004, 2009 WL 1872535, at *1 (W.D. Va. June 30, 2009) ("Upon default judgment, Plaintiff's factual allegations are accepted as true for all purposes excluding determination of damages.").

Rather, the court must make an independent determination regarding allegations as to damages. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999). In so doing, the court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). However, the court may also make a determination of damages without a hearing, so long as there is an adequate evidentiary basis in the record to support an award of the requested damages. *See Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) ("[T]he court may rely on detailed affidavits or documentary evidence to determine the appropriate sum."); *see also Trustees of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, Civil No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011) (determining that, in a case of default judgment against an employer, "the Court may award damages without a hearing if the record supports the damages requested"); *Monge*, 751 F. Supp. 2d at 795 (same); *Pentech Fin. Servs., Inc.*, Civ. No. 6:09cv00004, 2009 WL 1872535, at *2 (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment because plaintiff submitted affidavits and records establishing the amount of damages); *JTH Tax, Inc. v. Smith*, Civil No. 2:06CV76, 2006 WL 1982762, at *3 (E.D. Va. June 23, 2006) ("If the defendant does not contest the amount pleaded in the complaint and the claim is for a sum that is certain or easily computable, the judgment can be entered for that amount without further hearing.").

Notably, under Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *See In re Genesys Data Techs, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000) ("When a Complaint demands a specific amount of damages,

courts have generally held that a default judgment cannot award additional damages."). This is meant to enable the defendant to decide whether to expend the resources to defend the action. *Monge*, 751 F. Supp. 2d at 796.

**B.**

Plaintiff claims that defendant violated the provisions of the FLSA and the MWHL, because he was not paid the required minimum wage throughout his employment as a cook at defendant's Pizza Boli's restaurant. ECF 1, ¶¶ 8-11; *see* 29 U.S.C. § 206; L.E. § 3-413. Further, plaintiff claims that defendant violated the provisions of the FLSA and the MWHL by failing to pay him overtime compensation when he worked in excess of forty hours per week. ECF 1, ¶12; *see* 29 U.S.C. § 207; L.E. § 3-414.

The FLSA provides that, for any hours worked in excess of forty hours per week, an employee shall "receive[] compensation for his employment . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207. Similarly, L.E. § 3-415(a) provides that "each employer shall pay an overtime wage of at least 1.5 times the usual hourly wage," and L.E. § 3-420(a) provides that overtime wages shall be computed "on the basis of each hour over 40 hours that an employee works during 1 workweek."

Further, 29 U.S.C. § 216(b) states:

> Any employer who violates the provisions of . . . section 207 of this title shall be liable to the employee . . . affected in the amount of . . . their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages. . . . The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

Maryland law is to the same effect. If states that "[i]f an employer pays an employee less than the wage required under this subtitle, the employee may bring an action against the

5

employer to recover the difference between the wage paid to the employee and the wage required under this subtitle," as well as for costs and attorney's fees. L.E. §§ 3-427(a) & (d).

With regard to the payment of regular wages, the MWPCL provides, *inter alia*, that an employer "shall pay the employee all wages due upon termination." L.E. § 3-505(a). Moreover, L.E. § 3-507.1(a) authorizes an employee's cause of action against the employer. And, L.E. § 3-507.1(b) provides that, if "a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs."

Plaintiff alleges that he was paid "in cash and off-the-books." ECF 21-1, ¶ 3. However, both Maryland and federal law require employers to keep records of employees' wages and hours. 29 U.S.C. § 211(c); L.E. § 3-424.

In those cases "in which wage and pay records, required to be kept by employers pursuant to 29 U.S.C. § 211(c), are not available, [the employee] must show the amount and extent of [his] improperly compensated work 'as a matter of just and reasonable inference.'" *Lopez v. Lawns 'R' Us*, Civil No. DKC-07-2979, 2008 WL 2227353, at *3 (D. Md. May 23, 2008) (Schulze, M.J.) (quoting *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985)); *see Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) ("Due regard must be given to the fact that it is the employer who has the duty under . . . the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be

erected for the employee to meet in carrying out his burden of proof."), *superseded by statute on other grounds, as stated in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972).

Notably, an employee's statement under oath "as to his recollection of the hours he worked and the pay he received, if considered credible by the trier of fact, is sufficient to establish a prima facie case of wages owed." *Lopez*, 2008 WL 2227353, at *3. And, if the employer does not successfully rebut the employee's statement, "[t]he Court may award damages based on Plaintiffs' testimony even though the amounts claimed are only approximated and not perfectly accurate." *Id.*[5]

Sweeney has adequately averred the enterprise coverage provisions under the FLSA. He has alleged that the defendant's Pizza Boli's franchise, in the aggregate, had annual gross volume of sales made or business done in an amount exceeding $500,000.00. ECF 1, ¶ 6. He also states that defendant had more than two employees, who are engaged in commerce, produce goods for commerce, or handle, sell, or otherwise work on goods or materials that have moved in or were produced for commerce. *Id.* ¶ 7. Plaintiff has also adequately set forth that, as "a single enterprise," Kahn was his "employer" within the meaning of the FLSA, MWHL, and MWPCL. *Id.* ¶¶ 5, 7. In addition, he alleges that Kahn supervised the administration of the business, including the hiring and scheduling of plaintiff and other employees. *Id.* ¶ 5; ECF 21-1, ¶ 2. And, plaintiff claims that there is an absence of any bona fide dispute with respect to his right to receive the wages in issue. Therefore, he claims he is entitled to recover treble wages under L.E. § 3-501 *et seq.* ECF 1, ¶¶ 22-27.

---

[5] Judge Grimm explained in *Monge*, 751 F. Supp. 2d at 789 n.5: "In *Lopez*, 2008 WL 2227353, at *3 n.5, Magistrate Judge Schulze noted that '[t]hese standards apply to FLSA claims . . . . but application of the FLSA standards [to MWCPL claims as well] is appropriate in light of Maryland's similar requirement that employers keep records of employees' hours and wages' and that '[c]ases indicate that the same kind of evidence—including an employee's testimony—would be competent under Maryland law.'"

In the Complaint, plaintiff did not seek a specific sum certain. However, plaintiff suggests that the nature of this case "lends itself to easy calculation and disposition of damages." ECF 21 at 4.

The amount that defendant owes plaintiff is readily calculated based on plaintiff's actual rate of compensation, the rate he should have been paid, and the overtime due to him that was not paid. In Sweeney's Affidavit (ECF 21-1), he avers that he earned $6.00 per hour during his first year of employment, and was paid an hourly rate of $7.00 in his second year. ECF 21-1, ¶ 3. But, he contends that he was entitled to $7.25 per hour in 2014; $8.00 per hour beginning January 1, 2015, and $8.25 per hour beginning July 1, 2015. *Id.* ¶ 6. He also asserts that he was never paid any overtime, which he regularly worked. *Id.* ¶¶ 4, 5. Sweeney also sets out the rate of pay for his overtime. *Id.* Moreover, Sweeney asserts that he usually worked six days a week and, on average, he worked 50 hours per week. *Id.* ¶ 5. However, he only worked about 30 hours a week for the last three weeks of his employment, because his employer "cut" his hours after he learned that Sweeney was seeking other employment. *Id.*

In his Affidavit (ECF 21-1, ¶¶ 6-7), plaintiff calculates his unpaid wages as follows:

> 6.            Under the MWHL, I was required to be paid the full minimum wage of $7.25/hour during the 10 weeks worked in 2014; $8.00/hour during the 25 weeks beginning 1/1/15, and $8.25/hour during the 31 weeks beginning 7/1/15. (For purposes of these calculations, I am not counting incomplete workweeks of less than seven consecutive calendar days.) With an overtime rate of $10.87/hour, I was required to be paid $398.70/week (40 hours x $7.25/hour + $10.87/hour x 10 overtime hours) for each full week in 2014 (10 weeks total). With an overtime rate of $12.00/hour, I was required to be paid $440.00/week (40 hours x $8.00/hour + $12/hour x 10 overtime hours) for each full week I worked beginning 1/1/15 (25 weeks total). With an overtime rate of $12.37/hour, I was required to be paid $453.70/week (40 hours x $8.25/hour + $12.37/hour x 10 overtime hours) (28 weeks), and $247.50/week (30 hours x $8.25/hour) (3 weeks), for each complete workweek beginning 7/1/15 (31 weeks total). Thus, the total MWHL-mandated wages are $28,433.10.

7.        Pursuant to my employment agreement, I should have been paid a total of $20,430.00 in hourly cash wages for the corresponding 66 weeks, i.e., $6.00/hour x 50/hours x 45/weeks, $7.00/hour x 50/hours x 18/weeks, and $7.00/hour x 30/hours x 3/weeks. (Mr. Khan regularly failed to pay me for all hours which I worked by shaving or rounding down my actual hours of work. For purposes of this calculation, I will assume that I was paid $20,430.00 for the 66 weeks at issue, but this is an extremely generous assumption.) *Accordingly, I am owed $8,003.10 in unpaid statutory minimum wages and overtime compensation under the MWHL and/or FLSA*. (Emphasis added.)

In addition, plaintiff seeks liquidated and statutory damages in an amount three times the amount of unpaid minimum wages and overtime. That sum totals $24,009.30. ECF 21 at 5.

Upon review of the submissions and the applicable statutes, I am satisfied that plaintiff has stated claims for violations of the Fair Labor Standards Act and the MWPCL. Moreover, the record supports an award of the damages he has requested.

## C.

I turn to plaintiff's request for attorneys' fees in the amount of $5,000 to Warbasse for 12.5 hours of work[6]; $840 to Hoffman for 2.10 hours of work; and costs of $400.47. The request is supported by the affidavits of counsel. ECF 21-2 (Warbasse); ECF 21-4 (Hoffman). In addition, the attorneys have submitted billing itemizations. ECF 21-3 (Warbasse); ECF 21-5 (Hoffman).

Pursuant to 29 U.S.C. § 216(b), L.E. § 3-507.1, and L.E. § 3-427(d), the court may award the employee's attorney's fees as well as costs. In an FLSA action, the "[p]ayment of costs to a prevailing plaintiff is mandatory. . . ." *Lopez*, 2008 WL 2227353, at *7. Under the FLSA, and other similar fee-shifting statutes, "the costs that may be charged to losing defendants include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to

_____

[6] Warbasse has written off 1.5 hours of work. *See* ECF 21-3.

a fee-paying client, in the course of providing legal services.'" *Id.* (finding a $350 filing fee and a $200 service process fee "well within the categories of normal and necessary costs of litigation that would normally be charged to paying clients"). On this basis, I shall award the requested costs of $400.47.

In calculating the appropriate award of attorneys' fees, the court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008); *see Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that, "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (citations and internal quotation marks omitted).

"The Supreme Court has indulged a 'strong presumption'" that the "lodestar" figure, as defined by the Court in *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), "represents a reasonable attorney's fee." *McAfee v. Boczar*, 738 F.3d 81, 88-89 (4th Cir. 2013). As indicated, to determine the lodestar figure, courts must multiply "'the number of reasonable hours expended times a reasonable rate.'" *Id*. (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009).

Notably, when entering a default judgment, the court may make an award of attorney's fees for a lesser amount than the moving party requested. *See DirecTV v. Agee*, 405 F. Supp. 2d 6, 8 (D.D.C. 2005) (concluding, on granting default judgment, that "plaintiff's requested relief … for attorneys' fees [was] excessive" and awarding half of what was requested in the plaintiff's motion). In other words, a trial court is vested with discretion in determining the award of fees, given its "'superior understanding of the litigation.'" *Thompson v. HUD*, No. MJG-95-309, 2002

WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (quoting *Daly v. Hill*, 790 F.2d 1071, 1078–79

(4th Cir. 1986)); *see also McAfee*, 738 F.3d at 88; *Robinson*, 560 F.3d at 243.

The court determines a reasonable fee by assessing whether the hours worked were

reasonable or whether the request includes hours that were unnecessary or duplicative. Thus, the

plaintiff "must show that the number of hours for which he seeks reimbursement is reasonable

and does not include hours that are excessive, redundant, or otherwise unnecessary." *Travis v.

Prime Lending*, No. 3:07cv00065, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008)

(concluding, after initially determining that the attorney's hourly rate was reasonable, that

attorney's fees requested by plaintiff were reasonable, based on documentation of hours worked

and the work completed); *Flynn v. Jocanz*, 480 F. Supp. 2d 218, 220–21 (D.D.C. 2007)

(awarding requested attorney's fees based on affidavits and the record).

In evaluating the reasonableness of the requested legal fee, the court considers the twelve

factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.

1974), and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th

Cir. 1978); *see McAfee*, 738 F.3d at 88-89. The *Johnson* factors follow, 488 F.2d at 717-19:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3)
> the skill requisite to properly perform the legal service; (4) the preclusion of other
> employment by the attorney due to acceptance of the case; (5) the customary fee;
> (6) whether the fee is fixed or contingent; (7) time limitations imposed by the
> client or the circumstances; (8) the amount involved and the results obtained; (9)
> the experience, reputation, and ability of the attorneys; (10) the "undesirability" of
> the case; (11) the nature and length of the professional relationship with the client;
> and (12) awards in similar cases.

Warbasse has been a member of the Maryland Bar since 1985. ECF 21-2, ¶ 2. Hoffman

has been a member of the Maryland Bar since 1999. ECF 21-4, ¶ 2. Both attorneys have

significant experience in the field of employment law. ECF 21-2, ¶ 2; ECF 21-4, ¶ 2. Indeed,

they practice regularly in federal court in Maryland in cases much like the one at bar.

In his Affidavit, Mr. Warbasse asserts, ECF 21-2 at 1: "I have significant experience representing plaintiffs in individual and collective actions under the Fair Labor Standards Act . . . ." He also identifies some of the cases he has successfully handled. Mr. Hoffman asserts in his Declaration, ECF 21-4 at 1, ¶ 2: "I concentrate on employment law." He details, at length, the "notable and widely cited decisions" as to cases for which he has been involved, adding that he has "provided a real contribution to the development of the law in this District and within the Fourth Circuit." *Id.* at 3, ¶ 7.

Under Appendix B to this Court's Local Rules, titled "Rules And Guidelines For Determining Attorneys' Fees In Certain Cases," attorneys admitted to the Bar for 15 to 19 years may reasonably bill at the rate of $275-$425 per hour. Lawyers admitted to the bar for 20 years or more may reasonably bill at $300-$475 per hour. Mr. Warbasse and Mr. Hoffman both seek compensation at the rate of $400 per hour. ECF 21-2, ¶ 3; ECF 21-4, ¶ 5.[7] I shall award legal fees at that hourly rate.

As to the amount of the legal fees, a reduction in the requested amount is appropriate. I shall explain.

Mr. Warbasse candidly characterized the instant case as one that is of a "straight-forward nature . . . ." ECF 21-2, ¶ 3. That assertion is completely accurate. In my view, for an experienced attorney who practices extensively in federal court in the field of employment law, this case can fairly be described as an uncomplicated wage and hour case. Moreover, the defendant never contested the case. The nature of the case is, of course, relevant to the reasonableness of the request for legal fees.

---

[7] Hoffman asserts in Declaration, ECF 21-4 at 7, ¶ 16: "The complexity, duration, and skills required in this case deserve a rate of $425.00. . . ." I disagree that this was a complex case. In any event, Mr. Hoffman has agreed to an hourly rate of $400. *See id.* ¶¶ 15, 16.

The Court recognizes that, for any number of valid reasons, two or more attorneys may work together on any given case. Inevitably, this results in conferences or consultation among counsel, and all the lawyers must, of course, keep informed about the case. But in this "straight-forward," uncontested case, one experienced attorney could have handled the case, so as to avoid any duplication of effort.

Mr. Warbasse seeks compensation for the time he spent in drafting, revising, and filing the complaint. He also seeks compensation for work related to service of process and for review of this Court's earlier Order regarding attorneys' fees. *See* ECF 14; ECF 21-3. A review of ECF 21-5, the itemization submitted by Mr. Hoffman, reflects billings for work that also appears on Mr. Warbasse's itemization. To illustrate, Mr. Hoffman seeks compensation for review of the lawsuit and summons and for his review of this Court's prior order regarding attorneys' fees. *See* ECF 14. Many of these charges are de minimis, for a mere tenth of an hour. Nevertheless, they are duplicative. Moreover, the de minimis expenditure of time suggests the work was not particularly substantive. In addition, Mr. Hoffman's submission contains charges for consultation with Mr. Warbasse, such as for the preparation of the fee petition and the request that the Court retain jurisdiction.

Counsel have not submitted any evidence or explanation to support the need for duplicate effort. Therefore, I discern no basis to assess duplicate fees to the defaulting party.

Both Mr. Warbasse and Mr. Hoffman devoted time to the initial motion for default judgment, filed in October 2016. *See* ECF 12. In particular, Mr. Warbasse expended about 1.9 hours and Mr. Hoffman spent .4 of an hour reviewing and revising. However, by Order of February 6, 2017 (ECF 16), I denied that motion as premature, because it failed to comply with the two-step process established by Fed. R. Civ. P. 55. In particular, I noted that plaintiff had

failed to obtain a Clerk's entry of an order of default, as required under Rule 55(a). *Id.* Therefore, it would be difficult to justify a fee award for this submission, unless the work was reused in the filing of ECF 21, without a double charge. I am satisfied in this regard. And, as to the corresponding fee request, identical or nearly identical affidavits of counsel were submitted. *See* ECF 15-1; ECF 21-2 (Warbasse); ECF 15-3; ECF 21-4 (Hoffman).[8]

Mr. Warbasse seeks fees for 2.5 hours of work in drafting and revising the Complaint, which consists of a little more than eight pages. Much of it appears to be boilerplate. Moreover, as to those paragraphs with allegations specific to this case, they include averments for three plaintiffs who were voluntarily dismissed. Even those paragraphs that contain assertions specific to the case are not very detailed. For example, there is no specificity as to the claim for overtime or for the deficiency in wages.

To be sure, an inexperienced lawyer would most likely spend at least 2.5 hours, if not more, in drafting this Complaint. But, it is difficult to understand how an experienced attorney spent 2.5 hours in drafting this particular Complaint. And, as noted, it pertains to four plaintiffs, only one of whom has prevailed. Therefore, I will reduce the compensable time from 2.5 to 2 hours. Accordingly, I will reduce Mr. Warbasse's fee request from $5,000 to $4,800.

Notably, Mr. Warbasse's bill does not reflect work after January 2, 2017. Rather, it was Mr. Hoffman who undertook the legal work performed in February 2017. Therefore, I will award fees for that work, as well as fees incurred by Mr. Hoffman on November 17, 2016, for preparation of his fee request. This totals $360, rather than the requested $840.

Therefore, I will award a total of $5,160.00 in legal fees.

---

[8] As to Mr. Hoffman, in ECF 15-3, he averred that he had not incurred any costs. *Id.* ¶ 4. But, in ECF 21-4, he averred that he had incurred the cost of .47 in postage. *Id.* ¶ 4.

**D.**

Finally, counsel have asked this Court to retain jurisdiction in order to award supplemental attorneys' fees and costs, if necessary.  *See*, *e.g.*, *Jackson v. Egira, LLC*, RDB-14-3114, 2016 WL 5815850, at *n.5 (D. Md. Oct. 5, 2016); *Durham v. Jones,* WMN-10-2534, 2012 WL 3985224, at *10 (D. Md. Sept. 10, 2012), *aff'd*, 737 F.3d 291 (4th Cir. 2013).   I will do so, because this helps to avoid "a hollow victory for a plaintiff . . . ."  *Van Dyke v. BTS Container Service, Inc.*, 08-561-KI, 2010 WL 56109, at *1 (D. Oregon, Jan. 4, 2010).

An Order follows.


Date:   June 30, 2017                               /s/

                                                     Ellen L. Hollander
                                                     United States District Judge